**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Solar Utilities Network, LLC, | |
| Plaintiff, | No. CV-12-08095-PCT-PGR |
| vs. | ORDER |
| Navopache Electric Cooperative, Inc., | |
| Defendant. | |

Among the motions pending before the Court is defendant Navopache Electric Cooperative, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 15), wherein the defendant seeks the dismissal of the entirety of plaintiff Solar Utilities Network, LLC's First Amended Complaint ("FAC") (Doc. 7) for failure to state a claim, and the plaintiff's Conditional Motion for Leave to Amend (Doc. 20). Having considered the parties' memoranda in light of the allegations of the FAC, the Court finds that the FAC should be dismissed with leave to amend.[1]

---

[1] Although the plaintiff has requested oral argument, the Court concludes that oral argument would not significantly aid the decisional process.
    The Court notes that it has intentionally not discussed every argument raised by the parties and that those arguments not discussed were considered by the Court to be unnecessary to its resolution of the pending motions.

Background

According to the FAC, this action arises out of the defendant's alleged wrongful repudiation and termination of the parties' Power Purchase Agreement ("PPA") dated October 15, 2010. The purpose of the PPA, which the parties entered into after two and half years of planning and negotiating, was to assist the defendant in complying with requirements of the Arizona Corporation Commission that it obtain certain amounts of its electricity from renewable energy sources. Pursuant to the PPA, the defendant agreed to purchase for twenty years all of the electric energy and related environmental benefits produced at or attributable to a one megawatt solar power plant that the plaintiff was to construct and operate in Hunt Valley, Arizona. In early August 2011, the defendant terminated the PPA and repudiated its contractual obligations without warning on the ground that the plaintiff breached the PPA by failing to timely secure construction financing and to timely commence construction of the solar power plant. The FAC alleges claims for breach of contract and for breach of the implied covenant of good faith and fair dealing, both arising from the termination of the PPA.

Discussion

The defendant seeks the dismissal of both claims in the FAC with prejudice pursuant to Fed.R.Civ.P. 12(b)(6). The defendant's basic position is that the Court can determine as a matter of law from the facts alleged in the FAC, together with the uncontested documents relied on and referred to in the FAC, both that the defendant properly terminated the PPA because the plaintiff unquestionably failed to timely perform as required by § 2.02(b) of the PPA, and that any amendment of the FAC would be futile.

There is no dispute that the PPA permitted the defendant to terminate the

contract under certain circumstances, which included the plaintiff's failure to timely perform its obligations as required by § 2.02(b) of the PPA.[2]  That provision provided that

> [i]n the event that Construction Financing has not been secured, and construction of the Generating Facility commenced, by July 31, 2011, Buyer [the defendant] shall have the right to terminate in this Agreement without payment or penalty by giving Notice to Seller [the plaintiff], which Notice when given shall automatically terminate this Agreement.

What is disputed by the parties is how § 2.02(b) is to be interpreted, *i.e.,* what the plaintiff had to do to "secure" construction financing and to "commence" construction.[3] The defendant argues in effect that the plaintiff has pleaded itself out of court because it is clear from the FAC that the plaintiff did not by the July 31, 2011 deadline either "secure" the required construction financing, which the defendant interprets as requiring an actual commitment of financing, nor did the plaintiff "commence" construction, which the defendant interprets as requiring the commencement of some actual vertical construction of a facility capable of generating electricity, given the FAC's allegations that the plaintiff had by the deadline only obtained a preliminary proposal for financing[4], a proposal for

---

[2] The plaintiff acknowledges in the FAC that the PPA provided the defendant with "a limited right to terminate the contract only if the Plant was not operational by July 31, 2012, or if [the plaintiff] did not secure construction financing or commence construction by July 31, 2011." (FAC ¶16).

[3] The Court notes that the terms "secured" and "commenced" as used in § 2.02(b) are not defined in the PPA.

[4] With regard to securing construction financing, the FAC alleges that "the PPA did not require that [the plaintiff] close on construction financing to comply

- 3 -

construction, a draft construction contract, and was ready to finalize the solar plant's design.[5] The plaintiff argues that the PPA, if construed as the parties intended at the

---

with the July 31, 2011 deadline, but only required that [the plaintiff] secure construction financing[,]" (FAC ¶ 18), that the plaintiff was able to "secure a written proposal for construction financing ... on July 22, 2011, from National Cooperative Bank, FSB ("NCB"), a bank dedicated to delivering nationwide banking products to cooperatives like [the defendant,]" (FAC ¶29), that the plaintiff "received NCB's proposal before the PPA's July 31, 2011 deadline to secure construction financing[,]" (FAC ¶ 30), and that "NCB gave [the plaintiff] thirty days to accept the terms of its proposal and to submit an initial deposit of $10,000." (FAC ¶ 31).

The Court notes that the plaintiff, in connection with its motion to amend, has submitted additional relevant information which could be alleged in a second amended complaint, including that it was the regular practice of NCB, the plaintiff's financing bank, to issue a financial proposal, such as the one the plaintiff received prior to the deadline, only after a substantial portion of the underwriting is completed and the parties have agreed to the overall financing structure of the proposed transaction, that NCB would have timely closed on the financing proposal due to the reputation of DV, the plaintiff's financial advisor, and that NCB would have promptly closed on its financing proposal if the defendant had not terminated the PPA.

[5] With regard to commencing construction, the FAC alleges that the plaintiff

> negotiated and obtained a proposal for construction and a draft construction contract from Sundt on March 11, 2011; began the design of the Plant, including exchanging preliminary designs, with Sundt; and secured two construction-site surveys in April 2011. On April 20, 2011, [the plaintiff] closed escrow on the lease option agreement [for the plant property] it previously negotiated with JMK Properties. And, on July 31, 2011, Mr. Moore and Chriss Kengla, a participating landowner in the Hunt Valley project, held a ground-breaking ceremony.

(FAC ¶22).

In its proposed second amended complaint, the plaintiff would add the allegation that Sundt's construction proposal estimated a two-month time period to complete the physical construction of the solar power plant, and the plaintiff has

time of contracting, did not require that the plaintiff actually close on construction financing or actually begin vertical construction of the solar power plant by July 31, 2011 in order to avoid forfeiture and termination of the PPA since it was the parties' intent that the defendant could terminate the PPA by that date only if it was evident that the plaintiff could not complete construction of the plant by the construction completion deadline of July 31, 2012, which the plaintiff alleges in the FAC it was on schedule to do.

The dismissal of a complaint under Rule 12(b)(6) is appropriate where the complaint contains allegations establishing an absolute defense or bar to recovery. *See* Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir.1997) ("Whether the case can be dismissed on the pleadings depends on what the pleadings say.  A plaintiff may plead [itself] out of court.  If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts.") (internal citations, quotation marks and brackets omitted.)  The Court, however, is not persuaded that it can appropriately determine at this time that the defendant was justified as a matter of law in terminating the PPA based on the plaintiff's § 2.02(b)-related performance, nor is the Court persuaded that it would be futile to allow the plaintiff to amend the FAC.

The standard of review at this nascent stage of the litigation is not whether the

---

submitted additional factual contentions that could be included in a second amended complaint, including information that Sundt was on board with the project and would be able to complete construction of the plant well before the construction completion deadline of July 31, 2012.

While the defendant contends that the plaintiff's ground-breaking ceremony held on the day of the construction commencement deadline was merely a pretense, the validity of that contention is not something the Court can resolve on a Rule 12(b)(6) motion.

plaintiff's claims must be true or even probable, but whether they are backed by factual allegations in the complaint, accepted as true, that make the claims facially plausible, *i.e.*, are sufficient to permit the Court, drawing on its judicial experience and common sense, to make the reasonable inference that the defendant is liable for the alleged misconduct such that it would not be unfair to require the defendant to be subjected to the expense of discovery and continued litigation. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Starr v. Baca, 652 F.3d 1202, 1216-17 (2011), *cert. denied*, 132 S.Ct. 2101 (2012). If the complaint meets that standard, it must be allowed to proceed even if the actual proof of its alleged facts is improbable and a recovery is very remote and unlikely. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

While the sufficiency of the allegations related to the plaintiff's performance directed at its § 2.02(b) compliance is problematic, especially those related to the commencement of construction, the issue of the plausibility of those allegations depends in part on how § 2.02(b) is interpreted, and the Court concludes that it need not now decide the validity of the parties' differing interpretations of § 2.02(b). This is because a dismissal with prejudice of this action is not now appropriate because the plaintiff also alleges in the FAC, in relation to both of its claims, that the termination of the PPA was improper inasmuch as the defendant impeded the plaintiff's ability to meet § 2.02(b)'s time requirement. The governing Arizona law recognizes the general principle that "[i]f one party to a contract prevents the other party from performing one of the conditions to the contract, then he cannot use the failure to deny his own obligation under the agreement." Fowler v. Dana, 436 P.2d 166, 167 (Ariz.App.1968). The gist of the FAC's hindrance-related allegations is that the plaintiff hired Dudley Ventures ("DV"), an investment and advisory services firm,

in January 2011 to assist it in obtaining the required construction financing, that DV advised the plaintiff to obtain the defendant's audited financial statements for the years 2007-2009 because lenders or investors would be unlikely to finance the project without proof of the defendant's ability to perform under the PPA, that the plaintiff requested those statements from the defendant beginning in mid-February 2011 and repeatedly thereafter for the next three months, but the defendant refused to produce them until May 18, 2011.[6]  Based on these allegations, the plaintiff

---

[6]

The plaintiff alleges in part in the FAC as follows:

25. Acting on DV's advice, Mr. Moore [the plaintiff's principal] sent [the defendant] an email on February 14, 2011 requesting that it forward [the defendant's] audited financial statements to assist [the plaintiff] in securing construction financing. Mr. Moore specifically informed [the defendant] that "his lenders are requesting financials from [the defendant]" and explained that lenders needed the information to verify [the defendant's] ability to perform under the PPA as [the defendant's] performance would directly impact [the plaintiff's] ability to repay any lender or investor. David Plumb, the then CEO of [the defendant,] unexpectedly and without explanation denied [the plaintiff's] request, offering only his uninformed opinion that [the defendant's] audited financial statements provided to the [Arizona Corporation Commission] would suffice.
* * *
27. Frustrated and confused by [the defendant's] lack of cooperation, [the plaintiff] nevertheless continued to press [the defendant] for audited financial statements over the next three months. Mr. Moore raised the need for the audited financial statements essentially every time he reported to [the defendant] on the progress of [the plaintiff's] performance under the PPA, making at least ten more requests (nine telephonic and on in-person) for the audited financials in addition to the written requests discussed above. Mr. Plumb, on behalf of [the defendant,] denied each and every request.
28. Finally, on May 18, 2011, three months after [the plaintiff's] initial request, [the defendant] provided [the plaintiff] with its audited financial statements for 2007, 2008, 2009, and 2010.

alleges in the breach of contract claim that the defendant's own misconduct in failing to timely cooperate with the plaintiff caused any alleged delay in the plaintiff's performance, and it alleges in the breach of the implied covenant claim that the plaintiff's reasonable expectations under the PPA were denied in part by the defendant's failure to cooperate with the plaintiff's efforts to obtain construction financing.

While the plaintiff's allegations in the FAC certainly make its hindering of performance contention possible, the Court is not convinced that the FAC plausibly alleges that the degree of that hindrance prevented the plaintiff from timely complying with § 2.02(b) given that the plaintiff alleges that it received the defendant's audited financial statements some ten weeks prior to the § 2.02(b) deadline. *See* Iqbal, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not shown - that the pleader is entitled to relief.") (internal quotation marks omitted.)  The Court is also not convinced, however, that it would be futile to permit the plaintiff the opportunity to add additional factual allegations regarding this issue in a second amended complaint.

The defendant further argues that an independent ground for dismissing the

---

The Court notes that the plaintiff has submitted additional factual contentions in support of its motion to amend the FAC that could be incorporated into a second amended complaint, including information from NCB that it is essential and consistent with industry custom and practice for a lender to require a utility's audited financial statements before making a financing offer such as the one that NCB made to the plaintiff and that a utility's delay in providing its audited financial statements will delay the lender's decision to issue a financing offer.

FAC is that the plaintiff cannot, as a matter of law, recover the damages it seeks in light of the various damages-related provisions of the PPA.  While the plaintiff may not be able to establish its entitlement to certain types of damages under the PPA, that is not a reason to dismiss the FAC, or to prevent the plaintiff from filing a second amended complaint, given that the type and amount of damages, if any, the plaintiff may be entitled to under the PPA depend on numerous factors that cannot be resolved at this time.  Therefore,

IT IS ORDERED that Navopache Electric Cooperative, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 15) is granted to the extent that Solar Utilities Network, LLC's First Amended Complaint (Doc. 7) is dismissed pursuant to Fed.R.Civ.P. 12(b)(6) with leave to amend.

IT IS FURTHER ORDERED that Plaintiff's Conditional Motion for Leave to Amend (Doc. 20) is granted to the extent that Solar Utilities Network. LLC shall file a second amended complaint no later than October 31, 2013.[7]

IT IS FURTHER ORDERED that Navopache Electric Cooperative, Inc.'s Motion to Strike Reply (Doc. 30) is denied.

IT IS FURTHER ORDERED that the parties' Joint Status Request Re: Pending Motion to Dismiss, Conditional Motion for Leave to Amend, and Motion to Strike Reply (Doc. 33) is denied as moot.

DATED this 27th day of September, 2013.

Paul G. Rosenblatt
United States District Judge

---

[7] The Court notes that the second amended complaint may contain additional factual allegations not set forth in the plaintiff's proposed Second Amended Complaint (Ex. A to Doc. 20).